THE ROYAL LOAN ASSOCIATION v. SAMUEL
FORTER *et al.*

No. 13,472.   (75 Pac. 484.)

SYLLABUS BY THE COURT.

1. BUILDING AND LOAN ASSOCIATION — *Transaction Held Simply
   a Loan.* The facts in this case, such as the absence of competi-
   tive bidding for the loan, a level rate of interest, and premiums
   payable in gross instalments, and circumstances indicating that
   the borrower did not become a member of the building and loan
   association, sufficiently show that the transaction was not a
   building and loan association contract on which more than the
   legal rate of interest can be collected, but was simply a loan
   which is subject to the usury laws.

2. ———— *Kansas Contract — Kansas Usury Laws Govern.* Al-
   though the loan was made by an association organized in Mis-
   souri, the negotiations were had with an agent in Kansas; the
   bond and mortgage were executed in Kansas by residents of the
   state; the mortgage was on land in Kansas; the money borrowed
   was paid back to the agent in Kansas; and the recitals in the
   mortgage, as well as the actions of the parties, indicated that the
   parties treated the transaction as a Kansas contract, to be inter-
   preted in accordance with the laws of Kansas. Therefore, it was
   governed by the usury laws of Kansas.

Error from Marshall district court; SAM KIMBLE,
judge.   Opinion filed February 6, 1904.   Affirmed.

*Johnson, Rusk & Stringfellow,* and *J. A. Broughten,*
for plaintiff in error.

*Theodore H. Polack, W. A. Calderhead,* and *W. W.
Redmond,* for defendants in error.

The opinion of the court was delivered by

JOHNSTON, C. J.: The Royal Loan Association was
a corporation organized under the laws of the state of
Missouri, with its principal office located in the city
of St. Joseph.   It organized a local board with a local
secretary and treasurer at Marysville, Kan.   About

August 14, 1895, Samuel Forter applied to John H. Cole, the local secretary and collector at Marysville, Kan., for a loan of $400. On his application he obtained the sum of $382.75, and he and his wife executed a bond and a mortgage on real estate at Marysville, Kan., to secure the payment of the indebtedness. The application for the money was transmitted to the association at St. Joseph, Mo., where the loan was allowed. The papers were there prepared for execution and sent to Cole, the agent at Marysville, where they were executed by Forter and his wife, the money paid, and the transaction closed. On the part of the association, it is claimed that Forter became a member of the association, and that he was required to make payments on his shares according to the laws of Missouri and the by-laws of the association. The Forters claim that Mr. Forter never became a member; that no application for membership was made and no certificate of stock was issued and given to him; that the books of the association do not show that a certificate of stock was issued, and that no membership fee, as required by the by-laws, was paid or refused.

After the money was received by Forter, he subsequently made sixty payments of eight dollars per month, or $480. Having paid the amount received with the highest rate of interest permitted under the laws of Kansas, the Forters regarded the mortgage as paid and demanded that the Royal Loan Association release the same. This demand was refused and the present action was brought under sections 4224, 4225, and 4226, General Statutes of 1901, to procure a cancelation of the mortgage, and to recover damages for the refusal to enter satisfaction, as well as for a reasonable attorney's fee in prosecuting the action. A

trial resulted in a decree in favor of the Forters for the cancelation of the mortgage, quieting their title as against it, and also for $100 damages and $200 as attorney's fees.

The principal issue in the case was whether the transaction between the parties should be treated as a building and loan contract, one where the dues, premiums and other charges provided for may exceed the legal rate of interest on money borrowed, or whether it should be treated as a mere loan, wherein the parties stood toward each other in the relation of creditor and debtor alone. If it be treated as a loan, it seems to be conceded that the Forters have paid the amount borrowed with the full legal rate of interest chargeable for money in Kansas. If he became a member and liable to pay the dues, premiums and other charges imposed by the association, there is yet due the sum of $142.79.

The conclusion of the trial court, that the contracts were usurious, the debt fully paid, and that the mortgage should be canceled and discharged, must be sustained. There was no competitive bidding for preference at a meeting of the directors when the loan was obtained, and they had fixed an arbitrary minimum rate, both of which, it is argued, were in violation of law. If this contention be correct, the case is in the situation of *Savings Association v. Worz*, 67 Kan. 506, 73 Pac. 117, and the transaction is no more than an ordinary loan. It is argued that the law of Missouri was amended on June 21, 1895, dispensing with competitive bidding, and that, in pursuance of the amended law, the association, on June 22, 1895, amended its by-laws, making them conform to the new statutory provisions. This argument is met by the claim that the reorganization and enactment of by-

laws under the amended law of Missouri was not valid, for the reason that under that law it was necessary to call a meeting of the stockholders upon a notice as provided by the by-laws for special or annual meetings.    Such meetings required ten days' notice. It appears that the law went into effect on June 21, 1895, and that the association amended its by-laws pursuant to the new law on June 22, 1895, only one day after the law went into effect.    The notice was, therefore, not given for ten days, as the by-laws required, and it is argued, with much plausibility, that the attempted enactment of by-laws was without force or effect.

Another point is made that when the loan was made to Forter in August, 1895, the code of by-laws furnished him was the one first adopted, which showed that a loan to a member could only be made on a bid for the preference of the loan in an open meeting. This was not done.    Even if he were to be treated as a member, he had a right to rely on the by-laws furnished him as being the governing rules of the association, and the association would be bound in its dealings with him by those by-laws.    (*McKenney v. Diamond State Loan Asso.*, 9 Hous. (Del.) 557, 18 Atl. 905; *Sawyer v. Loan & Building Association*, 103 Mich. 228, 61 N. W. 521; *Peterson v. Building & Loan Ass'n*, 124 id. 573, 83 N. W. 606.)    Non-compliance with these rules tended to establish that the transaction was a loan, and subject to the usury laws of Kansas.

Did the relation of association and member exist between the parties?    Nothing in the case shows that Sarah E. Forter, one of the parties to the bond and mortgage, was in any sense a member of the association.    As to Samuel Forter, he applied for a loan of money of Cole, the agent of the association which

was offering money to loan. He did not apply for membership in the association; nothing in the correspondence as to the loan indicated that he must become a member, and the by-laws provided that money might be loaned to persons not members. No certificate was issued and delivered to him, and the books of the association did not show that he became a member. It is true the writings were on blanks used by the association which referred to stock issued to Forter as well as to the by-laws of the association, and a copy of the by-laws was handed to him during the negotiation. When Forter inquired of Cole, the agent of the association, whether by the execution of these papers he would become a member, the agent informed him that he did not know. But even the by-laws which were handed to him indicated that the association could make loans to persons not members, and also that in making loans to members there must be competitive bidding for the loan and no minimum limits could be fixed for the premium. As neither of these provisions had been complied with, there was reason for Forter to assume that he was not in the membership class. Under all the circumstances there was warrant for the court to hold that Forter was not a member and that the transaction was only a loan.

Considering the plan and the way in which the negotiations were carried on, the transaction has all the symptoms of a scheme to avoid the usury law. In addition to these considerations, and more important, perhaps, the transaction appears to be a Kansas contract, and is necessarily governed by the laws of Kansas. It was a Missouri corporation, it is true, but its plan and its by-laws were quite unlike the provisions of the Kansas law with respect to building and loan associations. Even if the amended law of Missouri,

by which the association might dispense with bidding for loans and might provide for a level rate of interest and premiums payable in gross instalments, be applicable, this transaction would be nothing more than a loan, and the usury laws would apply.   The bond and mortgage were executed in this state, where the lands lie ; the mortgagors live in this state ; the borrowed money was paid to the parties in this state ; and of necessity a portion of the contract was enforceable in Kansas, and could under no circumstances be enforced in Missouri.   The mortgage must be oreclosed in this state, and from the language of the mortgage itself it appears that the parties contemplated that it was a Kansas contract, to be interpreted in accordance with the Kansas law, for they provided in the mortgage that the first party released to the second all right, title, interest and estate in the premises, resulting from, or incident to, the homestead laws of the state of Kansas.

As the transaction is in the nature of a loan, and the relation between the parties is that of creditor and debtor, and as it was a Kansas contract, enforceable in Kansas, it is governed by the laws of Kansas in relation to usury.   As tending to support these views we cite : *Building Association v. Thompson*, 19 Kan. 321 ; *Savings Association v. Kidder*, 9 Kan. App. 385, 58 Pac. 798 ; *Savings Association v. Worz*, supra ; *Investment Association v. Stanley*, 38 Ore. 319, 63 Pac. 489, 58 L. R. A. 816, 84 Am. St. Rep. 793 ; *Meroney v. Loan Association*, 116 N. C. 882, 21 S. E. 924, 47 Am. St. Rep. 841 ; *Rhodes v. Missouri Savings Co.*, 173 Ill. 621, 50 N. E. 998, 42 L. R. A. 93 ; *Building & Loan Ass'n v. Burch*, 124 Mich. 57, 82 N. W. 837, 83 Am. St. Rep. 311 ; *Hoskins v. Rochester Savings & Loan Ass'n*, 95 N. W. (Mich.) 566 ; *Building & Loan Ass'n v. Griffin*

*et al.*, 90 Tex. 480, 39 S. W. 656 ; *United States Savings & Loan Company v. Scott*, 98 Ky. 695, 34 S. W. 235 ; *Fidelity Savings Assn. v. Shea*, 6 Idaho, 405, 55 Pac. 1022 ; *P. B. & L. Association v. Fowble*, 18 Utah, 206, 55 Pac. 57.

We cannot say that the attorney's fee nor the damages allowed are excessive and, no error being found in the record, the judgment of the district court will be affirmed.

All the Justices concurring.